IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| JESSIE RAY HICKMAN, ) | | |
| AIS #155639, ) | | |
| ) | | |
| Plaintiff, ) | | |
| ) | | |
| v. ) | CIVIL ACTION NO. 1:14-CV-967-SRW | |
| ) | | |
| SHARON MCSWAIN HOLLAND, *et al.*, ) | | |
| ) | | |
| Defendants. ) | | |

## SPECIAL REPORT AND ANSWER

COME NOW the Defendants, **Sharon McSwain Holland** and **Chequita Walker** by and through the undersigned counsel, and in compliance with this Honorable Court's previous orders, do hereby submit the following Special Report and Answer:

## PARTIES

1. The Plaintiff, Jessie Ray Hickman, is an Alabama Department of Corrections (ADOC) inmate currently housed at Kilby Correctional Facility in Mt. Meigs, Alabama.

2. Defendant Sharon McSwain Holland is employed by ADOC as the Warden at the Elba Community Based Facility/Work Center in Elba, Alabama.

3. Defendant Chequita Walker is employed by ADOC as the Chief Steward at the Elba Community Based Facility/Work Center in Elba, Alabama.

## DEFENDANTS' EXHIBITS

In accordance with this Court's Order, the Defendants submit the following exhibits:

1. Exhibit A – Affidavit of Sharon McSwain Holland.

2. Exhibit B – Affidavit of Chequita Walker.

## PLAINTIFF'S ALLEGATIONS

Inmate Hickman claims that the Defendants were deliberately indifferent to his medical needs and that they have somehow discriminated against him. Hickman was employed in the kitchen at the Elba Work Release Center operating the dish washing machine. Hickman has a medical condition that he terms as "seizures," and on April 30, 2014, medical personnel restricted him from operating heavy machinery or being exposed to heat or fire. (See Special Needs Communication Form attached to Exhibit A) On or about June 16, 2014, Hickman approached the Defendants and asked to be reassigned to a different area of the kitchen as he claimed that the dish machine has a "190 degrees of heat factor." Defendant Walker told Hickman that she did have another position in the kitchen for him. On June 18, 2014, Hickman was evaluated by medical personnel and found to be non-compliant and/or unstable and was transferred to Kilby Correctional Facility as a result. Hickman vaguely alleges discrimination and requests $950,000 in damages against each Defendant.

## DEFENDANTS' RESPONSE

Defendants respond to the Plaintiff's complaint as follows:

1.      Defendants deny that they have violated any of the Plaintiff's constitutional rights.

2.      Defendants deny that they violated the Plaintiff's right to be free from cruel and unusual punishment under the Eighth Amendment, and state that they have never refused the Plaintiff any medical care.

3.      Defendants deny that they were deliberately indifferent to any of the Plaintiff's medical needs.

4.      Defendants plead the affirmative defenses of sovereign and qualified immunity.

5. Defendants assert that the Plaintiff is not entitled to compensatory or punitive damages.

6. Defendants assert that the Plaintiff is not entitled to equitable or injunctive relief.

7. Defendants assert the affirmative defense of contributory negligence.

8. Defendants assert the affirmative defense of unclean hands.

9. Defendants assert that there is no genuine issue of material fact in this case and the Defendants are entitled to judgment as a matter of law.

10. Defendants plead the general issue.

## STATEMENT OF FACTS

On June 16, 2014, inmate Hickman approached Chief Steward Walker about being moved from his assignment in the kitchen operating the dishwashing machine. (Exhibit B) Hickman presented a medical restriction form dated April 30, 2014 stating Hickman could not operate heavy machinery or be exposed to heat or fire. *Id*. Walker explained to Hickman that he was already working in the coolest part of the day on the 2 AM shift, and that the dishwashing machine was neither considered heavy equipment nor does it emit excessive heat as it is completely enclosed during operation. *Id*. Therefore, Walker denied Hickman's request to be reassigned to a different job in the kitchen. *Id*. After learning of Hickman's medical condition and the fact that Chief Steward Walker was not going to reassign Hickman to another position in the kitchen, Warden Holland instructed Hickman to see the medical staff to ensure that Hickman was medically compliant. (See Exhibit A)  Upon medical evaluation, Hickman was found to be non-compliant/unstable, and was subsequently transferred to Kilby Correctional Facility. (See Exhibit A and Plaintiff's Complaint)  While at Elba Work Release Facility, Hickman had a history of medical emergencies where he experienced seizures, many of which occurred while

working in the laundry facility (See Exhibit A, and attachments)  The Defendants had no knowledge of Hickman's medical work restrictions until Hickman presented documentation on June 16, 2014. (See Exhibits A & B)

## ARGUMENT

**I.       The Plaintiff's Complaint Fails to State Any Viable Claims.**

The Plaintiff's main allegations against the Defendants are that they were deliberately indifferent to his medical needs, although there is also a vague allegation of discrimination as well.  The Plaintiff seeks damages in this action filed pursuant to 42 U.S.C. § 1983 which provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

§ 1983 provides a private cause of action for persons whose rights under the federal constitution or laws have been violated under the color of state law. 42 U.S.C. § 1983.  In order to establish a claim under § 1983, Plaintiff must show that Defendants acted under the cloak of state authority when they participated in the conduct alleged by Plaintiff and that their actions deprived Plaintiff of a right or rights secured by the United States Constitution or other federal laws.  Violations of state statutes or tortious conduct under state law do not constitute the type of injury for which § 1983 provides a remedy.  The Plaintiff fails to establish that any of his constitutional rights were violated and therefore Defendants are entitled to summary judgment as

4

a matter of law.

### A. Defendants did not violate the Eighth Amendment.

The Eighth Amendment protects incarcerated prisoners from punishment that is "cruel and unusual." *Whitley v. Albers,* 475 U.S. 312, 318, 106 S.Ct. 1078, 1083 (1986); *see also Ingraham v. Wright,* 430 U.S. 651, 664, 97 S.Ct. 1401, 1408-09 (1977). Specifically, the Eighth Amendment "prohibits the unnecessary and wanton infliction of pain ..., the infliction of pain totally without penological justification ..., [and] the infliction of punishment grossly disproportionate to the severity of the offense." *Ort v. White,* 813 F.2d 318, 321 (11th Cir.1987) (citing *Rhodes v. Chapman* 452 U.S. 337, 346, 101 S.Ct. 2392, 2398 (1981)).

As the Eleventh Circuit has stated, "deliberate indifference to a prisoner's serious medical needs violates the Eight Amendment." *Ciccone v. Sapp*, 238 Fed.Appx. 487, 488 C.A.11 (Fla.) (2007). Deliberate indifference consists of an objectively serious medical need and a subjective inquiry of the prison official's actions towards that need. *Id*. In *Ciccone*, the Eleventh Circuit defines a "serious medical need" as "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id,* (quoting *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003)). Even if Hickman's work restrictions constitute a serious medical need, Hickman cannot establish that either Defendant acted with deliberate indifference to that need. As the Eleventh Circuit has stated, deliberate indifference requires "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." *Farrow*, 320 F.3d at 1245 (citation and quotation marks omitted).

The Plaintiff cannot point to any specific actions of Defendants that have resulted in him being denied or delayed medical treatment, much less one that would constitute "an excessive

5

risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). The Eleventh Circuit has noted that "the nature of the medical need is relevant in determining what type of delay is constitutionally intolerable." *Ciccone*, at 498, citing *McElligott v. Foley,* 182 F.3d 1248, 1255 (11th Cir.1999) (other citations omitted). Despite the medical restrictions being issued on April 30, 2014, Hickman did not bother to share this with the Defendants until June 16, 2014, the day he was trying to get assigned to another position in the kitchen. Immediately upon learning of the medical restrictions, Chief Steward Walker undertook an evaluation of the Plaintiff's work conditions to insure that his medical restrictions were not being violated. Walker determined that Hickman was neither operating heavy machinery, nor being subjected to excessive heat or fire. In fact, Hickman was already assigned to work during the coolest shift of the day. (See Exhibit B) Furthermore, when Warden Holland learned of Hickman's medical work restrictions, she asked for Hickman to have a medical evaluation to be performed just to make sure everyone was compliant with the newly discovered limitations. (See Exhibit A)

    The Defendants could not have been deliberately indifferent to medical restrictions to which they were unaware prior to June 16, 2014. Then, upon learning of the medical restrictions, Defendants took immediate action to ensure they were compliant with the restrictions. In short, there is absolutely no evidence to support Hickman's allegation that he was deprived of any medical care or that the Defendants were deliberately indifferent to his medical needs. All credible evidence before the Court is to the contrary. Even taking Plaintiff's allegations as true, the most that could be shown is an ordinary lack of due care for Mr. Hickman's comfort, which cannot qualify as cruel and unusual punishment. *Whitley v. Albers*, 475 U.S. 312, 319 (1986)  As there was no violation of Hickman's Eighth Amendment rights, Defendants are entitled to summary judgment as a matter of law.

**B.  The Defendants did not discriminate against the Plaintiff**.

The Plaintiff loosely alleges that he is somehow being discriminated against because he can no longer attend the work release camp in Elba after being transferred to Kilby Correctional Facility in Montgomery.  He cites no other facts or evidence to support his claims of discrimination.  It is undisputed that the medical professional who evaluated Hickman on June 18, 2014 found critical instability and non-compliance issues that required Hickman's transfer to a facility that could provide full time health care.  (See Medical Coding Assessment Guide, Exhibit A, page 3)  There is no credible evidence to suggest there was any other reason for the transfer.  Even if there were other evidence, Plaintiff's claims would still fail as he is not entitled to due process or equal protection for classification determinations.  The law is clear that inmates do not have a constitutionally protected interest in the procedure that affects their classification. See *Black v. McDonnell*, 2006 WL 1180795 (M.D.Ala.) at *2.  "[A] prisoner has no constitutional right to remain incarcerated in a particular prison or to be held in a specific security classification. *Black* at *2, citing *Moody v. Daggett,* 429 U.S. 78, 88 n. 9 (1976) (Constitution itself does not confer any right upon an inmate to any particular custody or security classification); *Meachum v. Fano,* 427 U.S. 215, 225 (1976) ("Confinement in any of the State's institutions is within the normal limits or range of custody which the conviction has authorized the State to impose.") (other citations omitted).  Since Hickman has no right to a specific classification or security status, "correctional officials may change his classification for a good reason, a bad reason, or no reason at all. *Black* at *2. See also *Flynn v. Scott*, 2006 WL 1236718 (M.D.Ala.) and *Brooks v. Culliver*, 2006 WL 3450138 (M.D.Ala.).  As Plaintiff utterly fails to show any evidence of discrimination, Defendants are entitled to summary judgment as a matter of law.

**II.     The Defendants Are Entitled to Immunity.**

The Defendants, in their official capacity, have asserted that they are immune from suit pursuant to the Eleventh Amendment and § 14, Alabama Constitution of 1901.  When a government defendant is sued in his official capacity under federal law, the claim is treated as a claim directly against the state or local government entity.  Consequently the Defendants are protected by sovereign immunity under the Eleventh Amendment for claims for money damages against them in their official capacity.  *Jackson v. Georgia Dep't of Trans*., 16 F.3d 1573, 1575 (11th Cir. 1994)*; Lancaster v. Monroe County, Ala*., 116 F.3d 1419 (11th Cir. 1997).

To the extent the Defendants are sued in their official capacity, they are immune from liability.  The Eleventh Amendment to the United States Constitution provides that "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state."  The Amendment therefore not only bars suits against a state by citizens of another state, but it also bars suits against a state by that state's own citizenry.  *See Edelman v. Jordan*, 415 U.S. 651, 663 (1974) and *Hans v. Louisiana*, 134 U.S. 1, 13-15 (1890).  The Eleventh Amendment also prohibits suit against state officials and employees where the state is the real, substantial party in interest.  *See Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 101-02 (1984).  "For example, if a lawsuit seeks to order the state officer to pay funds directly from the state treasury for the wrongful acts of the state, then the state is the real party in interest and the Eleventh Amendment bars the suit."  *Summit Medical Associates, P.C. v. Pryor*, 180 F.3d 1326, 1336 (11th Cir. 1999).  This suit is in reality a suit against the State.  Thus, the Defendants are absolutely immune from damages liability.

In addition, the Defendants are protected by qualified immunity.  As stated by the

Eleventh Circuit, "[q]ualified immunity protects government officials from civil trials and liability when their conduct in performing discretionary functions 'violates no clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Wilson v. Blankenship*, 163 F.3d 1284, 1288 (11th Cir. 1998), quoting *Lassiter v. Alabama A & M Univ. Bd. of Trustees*, 28 F.3d 1146, 1149 (11th Cir. 1994) (en banc).  Because the alleged acts of the Defendants consist of discretionary functions, and because the actions do not violate any clearly established constitutional or statutory rights, the Defendants are protected by qualified immunity. *Wilson, supra* (holding that the marshal, wardens, and corrections officer were protected by qualified immunity); *see also Pinkney v. Davis*, 952 F. Supp. 1561 (M.D. Ala. 1997) (holding that wardens, deputy warden, and other prison officials were entitled to qualified immunity).  The Eleventh Circuit has held that "[p]rison officials have 'wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.'" *Wilson,* 163 F.3d at 1295.  Surely, these policies and practices include evaluating an inmate's working conditions in light of his medical restrictions and ordering a medical evaluation of the inmate to determine their applicability.  Thus, summary judgment should be entered in favor of the Defendants.

## CONCLUSION

The Defendants have proven that the Plaintiff's claims are without merit.  The Plaintiff has not produced sufficient evidence of his claims to entitle him to any relief, and cannot show that any Eighth Amendment violations or discrimination occurred.  In addition, the Defendants are entitled to immunity in regards to the Plaintiff's claims.  Therefore, this Honorable Court should enter summary judgment in favor of the Defendants as a matter of law.

WHEREFORE, the above-cited facts and law considered, the Defendants request that this

Honorable Court treat this Special Report as a Motion for Summary Judgment and that summary judgment be entered in their favor.

Respectfully submitted this the 12th day of January, 2015.

      /s/ Todd E. Hughes
      TODD E. HUGHES
      Assistant Attorney General
      Counsel for Defendants

OF COUNSEL:

OFFICE OF THE ATTORNEY GENERAL
501 Washington Avenue
Montgomery, AL  36130
(334) 242-7374
(334) 242-2433 (fax)

## CERTIFICATE OF SERVICE

I certify that I have this 12th day of January, 2015, electronically filed the foregoing pleading with the Clerk of the Court, and that I have further served a copy of the foregoing on the following party, by placing same in the United States Mail, postage prepaid, and properly addressed as follows:

Jessie Ray Hickman, #152184
Kilby Correctional Facility
Post Office Box 150
Mt. Meigs, AL 36057

      /s/  TODD E. HUGHES
      OF COUNSEL