IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| JESSIE RAY HICKMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL NO. 1:14-cv-967-SRW |
| | ) | |
| SHARON McSWAIN HOLLAND, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**OPINION and ORDER**

**I. INTRODUCTION**

Plaintiff Jessie Ray Hickman ("Plaintiff"), a former[1] inmate of the Alabama Department of Corrections, brings this action pursuant to 42 U.S.C. § 1983, claiming violations of his federal rights while he was an inmate at the Elba Community Based Facility/Work Center ("Elba") in Elba, Alabama. Doc. 1. Plaintiff names as defendants Sharon McSwain-Holland, the warden at Elba; and Chequita Walker, the Chief Steward at Elba (collectively "Defendants"). Plaintiff seeks only damages. *Id.* at 6.

In accordance with the court's orders, Defendants filed an answer, special report, and supporting evidentiary material in response to the allegations contained in the complaint. Docs. 5, 19, 20. The court informed Plaintiff the defendants' special report may, at any time, be treated as a motion for summary judgment. Doc. 21. The court explained the proper manner in which to respond to a motion for summary judgment, including the fact that Plaintiff's response should be supported by affidavits or statements made under penalty of perjury and/or appropriate other evidentiary materials. *Id.* at 2-3. Plaintiff responded. Doc. 24.

---

[1] Plaintiff has been released from prison. Doc. 31.

Pursuant to 28 U.S.C. § 636(c)(1) and M.D. Ala. LR 73.1, the parties consented to a United States Magistrate Judge's conducting all proceedings in this case and ordering the entry of final judgment. Doc. 16. This case is now pending before the court on Defendants' motion for summary judgment. Upon consideration of the motion, Plaintiff's response, and the evidentiary materials filed in support of and in opposition to the motion, the court concludes that Defendants' motion for summary judgment is due to be granted.

## II. STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam) (citation to former Fed. R. Civ. P. 56 omitted; "issue" altered to "dispute" to reflect the stylistic change in the current rule). The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine [dispute] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (alterations added). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-24.

Defendants have met their evidentiary burden. Thus, the burden shifts to Plaintiff to

establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to the case exists. *Celotex*, 477 U.S. at 324; Fed. R. Civ. P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact [by citing to materials in the record including affidavits, relevant documents or other materials], the court may … grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it … ."); *see also Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014) (court considers facts pled in a plaintiff's sworn complaint when considering his opposition to summary judgment"). A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263. The evidence must be admissible at trial, and if the nonmoving party's evidence "is merely colorable … or is not significantly probative … summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986); Fed. R. Civ. P. 56(e). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice … ." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 252). Conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine dispute of material fact. *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (per curiam) (plaintiff's "conclusory assertions …, in the absence of [admissible] supporting evidence, are insufficient to withstand summary judgment"). Only disputes involving material facts are relevant, and what is material is determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 248. To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts… . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'"

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. Although factual inferences must be viewed in a light most favorable to the nonmoving party and pro se complaints are entitled to liberal interpretation by the court, a pro se litigant does not escape the burden of sufficiently establishing a genuine dispute of material fact. *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Thus, a plaintiff's pro se status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case. In this case, Plaintiff fails to demonstrate a genuine dispute of material fact so as to preclude summary judgment on his claims against Defendants. *See Matsushita*, 475 U.S. at 587.

### III. SUMMARY OF MATERIAL FACTS

The court views the facts in the light most favorable to Plaintiff. Defendant McSwain-Holland acknowledges that Plaintiff "experienced numerous medical emergencies while housed at Elba … ." Doc. 20-1 at 2. Those reflected in the record began in 2013. On April 25, 2013, Plaintiff felt dizzy and passed out while working in the laundry room at Elba. Doc. 20-1 at 9-10. About a week later, on May 2, 2013, Plaintiff again had symptoms of a seizure while working in the laundry; he was shaking, vomiting, and foaming at the mouth. *Id.* at 11-13. McSwain-Holland was notified. *Id.* Plaintiff was taken to the hospital for treatment and returned to Elba. *Id.* at 12-21; Doc. 20-2 at 1. On June 21, 2013, Plaintiff had a seizure in the yard. *Id.* at 20-2, at 2-3. McSwain-Holland was notified. *Id.* A little over a month later, on July 30, 2013, Plaintiff had a possible seizure in the yard; he was found slumped over and shaking with his eyes closed. *Id.* at 6-7. Again, McSwain-Holland was notified. *Id.* Medical staff treated the Plaintiff. *Id.* at 8.

Some months later, in December 2013, Plaintiff began working in the kitchen. Doc. 24 at 2. On February 23, 2014, Plaintiff "passed out on the facility Back Yard."[2] Doc. 20-2 at 9-10. According to his body chart, when Plaintiff was found he was non-responsive, but he "soon became alert and talkative." *Id.* at 11. He had a 1 1/2 cm cut inside his bottom lip and a small abrasion on his outer lower lip. *Id.* McSwain-Holland was notified. *Id.* at 9-10. Medical staff treated Plaintiff for a possible seizure. *Id.* at 11.

On March 25, 2014, while Plaintiff was working in the kitchen, Walker wrote Plaintiff a disciplinary report for refusing her order to wash dishes at about 1:45 p.m. *Id.* at 14-16. According to the incident report, Plaintiff entered Walker's office and said, "I am not going to wash those dishes." *Id.* at 14. A sergeant questioned Walker, and Walker said, "I was helping unload the canteen truck; she should have got someone else to wash the dishes instead of waiting on me." *Id.* at 14. At a disciplinary hearing on April 2, 2014, Plaintiff admitted he was guilty of failing to obey a direct order; he admitted the statement but said, "I don't recall saying it to Ms. Walker. I did say it when I was in the dorm." Doc. 20-3 at 3. On April 3, 2014, McSwain-Holland approved the discipline imposed for the rule violation. *Id.* at 4.

On the morning of April 3, 2014, Plaintiff was reported in the yard "looking confused and glassy eyed." Doc. 20-2 at 12. He said, "I just got a little hot. I don't need anything but a little rest." *Id.* He refused medical treatment, although he had symptoms of light-headedness, glassy eyes, dizziness, and overheating. *Id.* at 12-13. The incident report does not indicate that McSwain-Holland was notified about the incident. *Id.* at 12.

---

[2] Defendant's ADC body chart contains the statement that defendant "says while working he collapsed… ." *Id*. at 11. However, there is no indication in the duty officer report, incident report or body chart that defendant actually passed out on the back yard as a result of his work in the kitchen or, specifically, as a result of his operating the dishwasher at that time. *Id*. at 9-11. The record is silent on this point.

On April 29, 2014, Plaintiff was reported in the yard feeling sick and dizzy, and exhibiting a disoriented walk. Doc. 20-1 at 5-6. McSwain-Holland was notified. *Id.* Plaintiff was taken to Easterling Correctional Facility ("Easterling") for medical treatment and returned to Elba on April 30, 2014. *Id.* at 6. At Easterling, Dr. Jean Darbouze evaluated Plaintiff for seizure activity. *Id.* at 6-8. She increased Plaintiff's medication for seizures from 100 mg Dilantin Kapseal to 400 mg at bedtime. *Id.* On April 30, 2014, Dr. Darbouze issued Plaintiff a Special Needs Communication Form indicating that defendant "is not to operate heavy machinery and to avoid exposure to heat or fire." *Id.* at 4. The form includes a place to recommend further action for medical reasons, including a line for "Work restrictions," but this section is crossed out and no words are written in it. *Id.*

McSwain-Holland avers that on about June 16, 2014, Plaintiff approached her and showed her the Special Needs Communication Form. Doc. 20-1 at 1. McSwain-Holland states that, before that date, she "had no knowledge of Inmate Hickman's medical limitations." *Id.*; Doc. 19-2 at 2. McSwain-Holland indicates that she told Plaintiff to see Walker about his work assignment in the kitchen. McSwain-Holland also told Plaintiff to see medical staff to ensure that he was medically complaint. *Id.* at 2. McSwain-Holland states that she is not a medical professional and that she referred Plaintiff to medical staff for his medical needs. Doc. 19-2 at 1.

On that same day, June 16, 2014, Plaintiff also presented defendant Walker with the Special Needs Communication Form. Walker states that she had not seen the form before June 16, 2014, and was not aware of it until Plaintiff showed it to her. Doc. 20-4 at 1; Doc. 19-1 at 2. Walker says that Plaintiff "was placed in the kitchen; I was not aware of" Plaintiff's seizures, and Plaintiff "did not show any documentation about his condition until he received disciplinary action from me for refusing to work." Doc. 19-1 at 2. However, Walker also states that Plaintiff "was assigned

6

to the kitchen because he was having seizures in the Laundry Facility where the temperatures reach well above 100°." *Id.* at 1. Walker indicates that she did not refuse to move Plaintiff from the area of the dishwasher and pots and pans. *Id.* at 2. Walker states that she told Plaintiff on June 16 that she "had already moved him to the 2 AM shift because it was the coolest time to work in the kitchen and would not interfere with his job unloading the canteen truck." Doc. 20-4 at 1. Walker does not say when Plaintiff was moved to the 2:00 a.m. shift. Walker states that she also explained to Plaintiff that the dish washing machine in the kitchen "is not considered heavy equipment." *Id.* According to Walker:

> The dishwasher in the kitchen is a Hobart AM Select Dishwasher, model number AM 15-ML-130038. This dishwasher can reach temperatures of 155° up to 182°, and is not considered to be heavy duty. The machine is completely closed while in operation, therefore not emitting heat. Inmate Hickman was not working in excessive heat nor was he operating heavy machinery. Therefore, I would not move him to another shift or position in the kitchen.

*Id.* at 2. Walker states that Plaintiff "was assigned to the job that was available when he was placed in the kitchen." Doc. 19-1 at 2. Plaintiff, however, maintains that he "was placed in the kitchen in Dec. 2013," and "he was assigned to clean the dining hall 'before' being moved to the dishwasher." Doc. 24 at 2. Plaintiff claims that the dishwasher temperatures reached 190°. Doc. 1 at 4.

On June 18, 2014, Nurse Practitioner Stanley Coleman completed a Medical Coding Assessment Guide indicating that Plaintiff had "Critical Non-Compliance Issues, Unstable." Doc. 20-1 at 2-3. Plaintiff says that Coleman tried to talk with McSwain-Holland about Plaintiff's situation, but McSwain-Holland refused to listen. Doc. 1 at 4. Plaintiff says that Coleman then put in paperwork to transfer Plaintiff to Kilby Correctional Facility ("Kilby") "just to protect my health and me from any misbehavior of the Warden Holland and [Chief Steward] Mrs. Walker." *Id.* Walker states that she did not speak with Coleman or Dr. Darbouze, and she followed medical

orders. Doc. 19-1 at 2. Plaintiff says that McSwain-Holland had the authority to instruct Walker to follow Dr. Darbouze's medical orders. Doc. 24 at 2-3.

## IV. DISCUSSION

In his original complaint, Plaintiff complains that he was tasked with operating the dishwasher in the prison's kitchen, instead of being assigned to some different job, even though he was not supposed to operate heavy machinery or be exposed to heat because of his seizures. Doc. 1 at 4. He says that he was moved to another institution "just to protect my health and me from any misbehavior of" McSwain-Holland and Walker, "which is a deliberate indifference to my medical needs." *Id*. Plaintiff also claims that he was "being discriminated against" and "deprive[d] of attending work release/honor camp."[3] Doc. 1 at 5 (alteration added). He sues Defendants only in their "personal and individual capacity" for money damages. Doc. 1 at 5-6. The court construes the complaint to include claims against Defendants for violations of the Americans with Disabilities Act ("ADA")[4] and for deliberate indifference to his serious medical needs under the Eighth Amendment.

### A. ADA

Plaintiff's request for monetary damages from Defendants in their individual capacities for "discrimination" suggests a claim for violation of the ADA, but "there is no individual capacity

---

[3] Plaintiff does not seek injunctive relief. Doc. 1 at 6. If he did, his request would be moot because he is no longer at Elba. *See Jacoby v. Baldwin Cty.*, 835 F.3d 1338, 1342 n.1 (11th Cir. 2016) ("since Mr. Jacoby is no longer an inmate at the Baldwin jail, his claims for injunctive relief are moot"). To the extent that Plaintiff complains that Defendants' actions deprived him of placement in the work release/honor camp, Plaintiff does not have a right to be housed at any particular facility or particular classification. *See Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976) (Constitution itself does not confer any right upon an inmate to any particular custody or security classification); *Meachum v. Fano*, 427 U.S. 215, 225 (1976) ("Confinement in any of the State's institutions is within the normal limits or range of custody which the conviction has authorized the State to impose.").

[4] The ADA prohibits public entities from discriminating against qualified individuals with a disability. *See* 42 U.S.C. § 12131 et seq.

8

liability under … the ADA or RA." *Badillo v. Thorpe*, 158 F. App'x 208, 211-212 (11th Cir. 2005) (citation omitted); *Dale v. Moore*, 121 F.3d 624, 627 (11th Cir. 1997) ("[T]he ADA does not provide for individual liability[.]"). A private person may sue a public official in his official capacity for money damages under the ADA for conduct that *actually* violates the Fourteenth Amendment." *United States v. Georgia*, 546 U.S. 151, 159 (2006). Plaintiff does not assert facts sufficient to state a claim that Defendants actually violated his Fourteenth Amendment rights. Thus, Defendants are entitled to summary judgment on Plaintiff's claim for damages for "discrimination" based on a violation of the ADA.

### B. Eighth Amendment

### 1. Qualified Immunity and the Eighth Amendment

Defendants argue that they are entitled to qualified immunity, which offers them complete protection from civil damages for government officials sued in their individual capacities[5] if their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity is not merely a defense against liability but rather immunity from suit, and the Supreme Court "repeatedly [has] stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Pearson v. Callahan*, 555 U.S. 223, 231-32 (2009) (quotation marks and citations omitted) (alteration added). To receive qualified immunity, the public official must first prove that he was acting within the

---

[5] If Plaintiff sued Defendants in their official capacities, they would be protected by sovereign immunity under the Eleventh Amendment from claims seeking monetary damages against them for violations of the federal Constitution. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (official capacity lawsuits are "treated as a suit against the entity"); *Lancaster v. Monroe County*, 116 F.3d 1419, 1429 (11th Cir. 1997) (state officials may not be sued in their official capacity unless the state has waived its Eleventh Amendment immunity or unless Congress has abrogated the state's immunity); *Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990) (Alabama has not waived Eleventh Amendment immunity).

scope of his discretionary authority when the allegedly wrongful acts occurred. *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002). There is no dispute that Defendants were acting within the course and scope of their discretionary authority when the incidents complained of occurred. Plaintiff must, therefore, allege facts that, when read in a light most favorable to him, show that Defendants are not entitled to qualified immunity. *Cottone v. Jenne*, 326 F.3d 1352, 1358 (11th Cir. 2003).

To meet his burden, a plaintiff must show two things: (1) that a defendant committed a constitutional violation and (2) that the constitutional right a defendant violated was "clearly established." *Crosby v. Monroe County*, 394 F.3d 1328, 1332 (11th Cir. 2004). "To be clearly established, a right must be sufficiently clear that every reasonable official would [have understood] that what he is doing violates that right. In other words, existing precedent must have placed the statutory or constitutional question beyond debate." *Reichle v. Howards*, 132 S. Ct. 2088, 2093 (2012) (quotation marks and citations omitted). "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012) (quotation marks and citations omitted). If Plaintiff cannot establish both elements to satisfy his burden, then Defendants are entitled to qualified immunity; the court may analyze the elements "in whatever order is deemed most appropriate for the case." *Rehberg v. Paulk*, 611 F.3d 828, 839 (11th Cir. 2010) (citing *Pearson*, 555 U.S. at 241-42).

To prevail on a claim that prison officials disregarded a prisoner's medical problems in violation of the Eighth Amendment, the prisoner must, at a minimum, show that a defendant acted with deliberate indifference to the prisoner's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Farmer v. Brennan*, 511 U.S. 825, 832 (1994); *Melton v. Abston*, 841 F.3d 1207,

1220 (11th Cir. 2016) (relying on *Estelle* and *Farmer*). This standard requires a prisoner to "show: (1) a serious medical need; (2) the defendants' deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306-07 (11th Cir. 2009); *see also Melton*, 841 F.3d at 1220 (quoting *Mann*). The inquiry includes objective and subjective components, and the prisoner must show "an objectively serious need, an objectively insufficient response to that need, subjective awareness of facts signaling the need, and an actual inference of required action from those facts." *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000).

A medical need is serious if it "'has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Melton*, 841 F.3d at 1221-22 (citations omitted). It also includes a medical need "'that, if left unattended, poses a substantial risk of serious harm.'" *Id.* at 1222 (citation omitted). "Severe pain that is not promptly or adequately treated can also constitute a serious medical need depending on the circumstances." *Id.* (citations omitted). Any claim that specific medical procedures have been impermissibly delayed requires an inmate to put verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment. *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1188-89 (11th Cir. 1994), *abrogated on other grounds*, *Hope v. Pelzer*, 536 U.S. 730, 739 (2002).

As to the subjective component, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference …. The Eighth Amendment does not outlaw cruel and unusual 'conditions'; it outlaws cruel and unusual 'punishments.' … [A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be

condemned as the infliction of punishment." *Farmer*, 511 U.S. at 837-38; *see also Campbell v. Sikes*, 169 F.3d 1353, 1364 (11th Cir. 1999) ("proof that the defendant should have perceived the risk, but did not, is insufficient") (citing *Farmer*); *Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998) (defendant must have actual knowledge of a serious condition, not just knowledge of symptoms, and ignore known risk to serious condition to warrant finding of deliberate indifference). "The known risk of injury must be a strong likelihood, rather than a mere possibility before [the responsible official's] failure to act can constitute deliberate indifference." *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990) (alteration added, citations and internal quotations omitted). The conduct at issue "must involve more than ordinary lack of due care for the prisoner's interests or safety…. It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock." *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

Officers are entitled to rely on the judgment of medical expert staff. *See Williams v. Limestone Cty., Ala.*, 198 F. App'x 893, 897 (11th Cir. 2006) ("supervisory officials are entitled to rely on medical judgments made by medical professionals responsible for prisoner care"); *see also McRaven v. Sanders*, 577 F.3d 974, 981 (8th Cir. 2009) ("A prison official may rely on a medical professional's opinion if such reliance is reasonable."); *Johnson v. Doughty*, 433 F.3d 1001, 1011 (7th Cir. 2006) ("'Except in the unusual case where it would be evident to a layperson that a prisoner is receiving inadequate or inappropriate treatment, prison officials may reasonably rely on the judgment of medical professionals.'") (citation omitted).

Although "there is nothing inherently wrong with 'self-serving testimony,'" *Reid v. Sec'y, Fla. Dep't of Corr.*, 486 F. App'x 848, 852 (11th Cir. 2012), such "statements by a plaintiff do not create a question of fact in the face of contradictory, contemporaneously created medical records." *Whitehead v. Burnside*, 403 F. App'x 401, 403 (11th Cir. 2010) (citing *Bennett v. Parker*, 898 F.2d 1530 (11th Cir. 1990)); *cf. Scott v. Harris*, 550 U.S. 372, 380-81 (2007) (holding court should not have adopted the nonmoving party's version of the facts when it was "so utterly discredited by the record that no reasonable jury could have believed him"; instead it should have relied on the record that included a videotape that "blatantly contradicted" the nonmoving party's version of the facts); *Joassin v. Murphy*, 661 F. App'x 558, 559-60 (11th Cir. 2016) (where self-serving declarations from defendants and defendants' colleagues were not "so inherently credible as to 'blatantly contradict[]' and 'utterly discredit[ ]' plaintiff's self-serving testimony, summary judgment for defendants was not warranted).

### 2. Analysis

Plaintiff asserts that Defendants failed to accommodate his work limitations as set out in the April 30, 2014, Special Needs Communication Form, which indicated that he was "not to operate heavy machinery and to avoid exposure to heat or fire." Doc. 20-1 at 4. Defendants insist they did not know about Plaintiff's Special Needs Communication Form until he presented it to them on June 16, 2014. McSwain-Holland was notified about Plaintiff's seizures in 2013 and February 2014. The record also suggests that Walker was at least alerted to Plaintiff's medical problems sometime before June 16, because Walker moved Plaintiff to the early morning shift before that date because it was cooler.

Nevertheless, the record does not indicate, and Plaintiff does not identify, on what date he told Defendants of his medical needs after he was moved to the kitchen, and he does not contradict

their statements that they saw the Special Needs Communication Form for the first time on June 16, 2014. More importantly, Walker indicates that the dishwasher that Plaintiff used, with its temperatures of 155° up to 182°, is not considered "heavy machinery." Doc. 20-4 at 2. Even assuming, as Plaintiff states, that the machine reached a temperature of 190°, Plaintiff does not dispute Walker's testimony that "[t]he machine [was] completely closed while in operation, therefore not emitting heat" when Plaintiff used it or was in close proximity to it. Doc. 1 at 4; Doc. 20-4 at 2. The Special Needs Communication Form does not specifically state that Plaintiff could not work in the kitchen. Doc. 20-1 at 4. Except for Plaintiff's conclusory statement, there is no evidence in the record to support Plaintiff's assertion that the dishwasher constituted heavy machinery or created too much heat for Plaintiff to work around it. Plaintiff's conclusory statements, "in the absence of supporting evidence, are insufficient to withstand summary judgment." *See Holifield*, 115 F.3d at 1564 n. 6. Defendants, who are not medical professionals, reasonably relied on the restrictions set out by the professional medical staff. *See Williams*, 198 F. App'x at 897; *McRaven*, 577 F.3d at 981. Nothing in the record suggests that Plaintiff's medical needs were so obvious that a layperson would have recognized that working in the kitchen was unsafe for Plaintiff or that Defendants were deliberately indifferent to plaintiff's medical needs as described in the Special Needs Communication Form. *See Melton*, 841 F.3d at 1221-22. Plaintiff makes only conclusory statements that he was transferred to protect him from Defendants' misbehavior, and Plaintiff's conclusory statements are not enough to create a genuine dispute of material fact regarding his serious medical needs or Defendants' subjective beliefs. *See Holifield*, 115 F.3d at 1564 n.6. Finally, there is no evidence of record that Plaintiff ever suffered a seizure while actually working in the kitchen or washing dishes, and he cites no other medical harm caused by Defendants' actions. Based on this record, Plaintiff does not create a genuine dispute whether

Defendants were deliberately indifferent to his serious medical needs, or whether Plaintiff can show the causation necessary to demonstrate an Eighth Amendment claim against them. *See Mann*, 588 F.3d at 1306-07.

No reasonable juror could find that Defendants knew that the manner in which they treated Plaintiff while he was at work in the kitchen harmed Plaintiff or created a substantial risk to Plaintiff's health, and that with this knowledge they consciously disregarded such risk. Thus, no reasonable juror could find that Defendants were deliberately indifferent to Plaintiff's serious medical needs. Defendants are therefore entitled to judgment as a matter of law on Plaintiff's Eighth Amendment claim. *See Matsushita*, 475 U.S. at 587. Because Plaintiff fails to show a constitutional violation, Defendants are also entitled to qualified immunity. *See Hope*, 536 U.S. at 739 (quoting *Harlow*, 457 U.S. at 818).

## V. CONCLUSION

Accordingly, it is the ORDERED and ADJUDGED that Defendants' motion for summary judgment be and is hereby GRANTED.

A separate judgment will issue.

DONE, on this the 5th day of September, 2017.

/s/ Susan Russ Walker
Susan Russ Walker
United States Magistrate Judge